**ROBB, Pres., Appellant,**

**v.**

**OHIO DEPARTMENT OF LIQUOR CONTROL, Appellee.**

[Cite as *Robb v. Ohio Dept. of Liquor Control* (1994), 95 Ohio App.3d 379.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP-1041.

Decided May 5, 1994.

380

*Schwartz, Kelm, Warren & Rubenstein, Russell A. Kelm* and *John A. Gleason,* for appellant.

*Lee Fisher,* Attorney General, and *Chester Lyman,* Assistant Attorney General, for appellee.

---

DESHLER, Judge.

Appellant, Walter J. Robb II, on behalf of Freedom Road Foundation, appeals from a judgment of the Franklin County Court of Common Pleas denying him declaratory judgment and injunctive relief against appellee, Ohio Department of Liquor Control ("department").

This case arises out of the charitable fund-raising activities of Freedom Road Foundation ("Foundation"), affiliated with Freedom Road Ministries, Inc. Although appellant is the president of Freedom Road Ministries, he is apparently not an officer of Freedom Road Foundation, despite the fact that the original complaint in this action designated him as such. Despite the fact that this raises significant issues regarding whether the real party in interest is properly represented, the trial court ruled that the real party in interest was clearly discernable as Freedom Road Foundation for purposes of this action, and allowed the action to proceed without substitution. While appellee has raised this again as an issue upon appeal, appellee has done so only by way of argument in its brief, and has, in fact, brought no cross-appeal. In the absence of a specific assignment of error on this issue, we need not address it and will proceed to consider the assignments of error on appeal.

Freedom Road Foundation provides educational programs for underprivileged children at various locations in Ohio, with its principal operations in Albany and Springfield, Ohio. The Foundation's fund raising permits it to make charitable donations to various schools, individuals and community groups, as well as sponsoring various children's activities. The Foundation's principal avenue for fund raising is by means of schemes of chance conducted on the premises of some three hundred and fifty liquor permit holders in Ohio. These schemes, popularly called "tip-tickets," consist of games comparable to the instant winner games conducted by the Ohio Lottery Commission.

Evidence at trial provided an overview of a typical tip-ticket game, sold under the "Bill's Baby" name, as conducted by the Foundation. Lindy Douglas, President of Freedom Road Foundation, testified that the tip-tickets are distributed by the manufacturer in bags, in the case of the Bill's Baby tickets game, each bag containing one thousand twenty tickets. The tickets are sold at retail for $1 each; of the $1,020 thus raised from one bag, $800 is paid out by means of

thirty-two winning $25 tickets found in each bag. Of the remaining $220 raised, $20 covers the price of the tip-ticket bag from the ticket manufacturer. Twenty-five percent, or $55, is paid to the tavern owner as "rent" for providing the setting and personnel to sell the tip-tickets. A further five percent, or $11, is retained by the Foundation in a fund set aside for charitable contributions to a charity designated by the tavern owner. Ten percent, or $22, is paid to the Foundation's commissioned salespersons responsible for placing the tip-ticket games in taverns. The remainder goes towards the Foundation's charitable activities.

Douglas' testimony further established that all tavern owners and employees selling tip-tickets are enrolled as Freedom Road "volunteers" by means of a written membership and volunteer application form.

It is undisputed that the schemes of chance conducted by Freedom Road Foundation would be illegal under the general gambling prohibition of R.C. 2915.02(A), unless one of the exceptions of R.C. 2915.02(D) applies. From the perspective of a liquor permit holder, the activities would be barred under Ohio Adm.Code 4301:1-1-53 ("Regulation 53"), which parallels the provisions of R.C. 2915.02.

Apparently prompted by the prosecution of a tavern owner under Regulation 53, appellant filed this action in the Franklin County Court of Common Pleas on August 16, 1991, seeking clarification of the rights of Freedom Road Foundation under Ohio's gambling statutes and liquor regulations, and injunctive relief to prevent the issuance of further citations to participating permit holders by the department. A temporary restraining order was granted on September 14, 1991, ordering the department to refrain from citing participating liquor permit premises. The order was prolonged by means of an agreed judgment entry filed on December 27, 1991. The trial court overruled a motion by appellee to dismiss and dissolve the temporary restraining order on April 15, 1993. The case was tried to the court on June 28, 1993.

On July 15, 1993, the trial court issued a decision in favor of appellee, denying appellant's requested relief. The trial court based its decision upon three grounds. First, the trial court found that appellant did not *operate* the schemes of chance, as the court deemed to be required by R.C. 2915.02(D)(1), but merely *promoted* the games with cooperation of the liquor permit holders. The trial court found that the "use of a membership and volunteer application form is nothing but an ineffective attempt to shield [appellant] from liability." Second, the trial court relied on the specific language of R.C. 2915.02(D)(2)(e), which prohibits payment of any "commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, for operating or assisting in the operation of any scheme or game of chance." The trial court

found that the payment to liquor premises owners, and possibly the payments to Freedom Road Foundation's commissioned sales personnel, specifically violated the above provision. Third, the trial court concluded that declaratory judgment was inappropriate in this action because it could not terminate the uncertainty or controversy giving rise to the action. Because the Foundation in the trial court's view is essentially without control of the actions of its "volunteers" in selling the tip-tickets, the potential for fraud or abuse by the permit holders in selling the tip-tickets would not be reached by any declaration that the basic scheme conducted by Freedom Road Foundation was legal. Thus, the trial court denied all relief sought by appellant.

Appellant has timely appealed and brings the following two assignments of error:

"1. The trial court erred as a matter of law in finding that Freedom Road's sale of schemes of chance is in violation of R.C. 2915.02 and Regulation 4301:1-1-53 of the Ohio Liquor Control Commission.

"2. The trial court erred as a matter of law when it permitted the Department of Liquor Control to introduce documents into evidence that were not produced to Freedom Road until five minutes before trial."

In beginning our analysis of this case, we will examine the language of the relevant statutes:

R.C. 2915.02:

"(A) No person shall do any of the following:

" * * *

"(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;

" * * *

"(D) This section does not apply to any of the following:

"(1) Schemes of chance conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted

during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code;

"(2) Games of chance, if all of the following apply:

"(a) The games of chance are not craps for money, roulette for money, or slot machines;

"(b) The games of chance are conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect, stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code;

"(c) The games of chance are conducted at festivals of the organization that are conducted for a period of four consecutive days or less and not more than twice a year, and are conducted on premises owned by the charitable organization for a period of no less than one year immediately preceding the conducting of the games of chance, on premises leased from a governmental unit, or on premises that are leased from a veteran's or fraternal organization and that have been owned by the lessor veteran's or fraternal organization for a period of no less than one year immediately preceding the conducting of the games of chance;

" * * *

"(d) All of the money or assets received from these games of chance after deduction only of prizes paid out during the conduct of the games of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 590(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code;

"(e) The games of chance are not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code.

"No person shall receive any commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, for operating or assisting in the operation of any scheme or game of chance.

" * * *

"(E) Division (D) of this section shall not be construed to authorize the sale, lease, or other temporary or permanent transfer of the right to conduct schemes of chance or games of chance, as granted by division (D) of this section, by any charitable organization that is granted that right."

Regulation 53 provides in pertinent part as follows:

"4301:1–1–53: (A) Conviction in any court of competent jurisdiction of any holder of any permit, or of his agent or employee, or of any person, for keeping, exhibiting for gain, operating gambling devices, or conducting or permitting on such premises any games of chance, shall be grounds for suspension or revocation of such permit or permits.

" * * *

"(D) This rule shall not be construed to prohibit a game or contest sponsored and conducted in accordance with division (D) of section 2915.02 of the Revised Code, provided that such game or contest strictly complies with all of the provisions of division (D) of section 2915.02 of the Revised Code and shall not prohibit the conducting of schemes of chance and certain games of chance by charitable organizations as defined in division (H) of section 2915.01 of the Revised Code so long as there is strict compliance with division (D) of section 2915.02 of the Revised Code."

■ We first address the trial court's conclusion that under R.C. 2915.02(D)(2)(e), the schemes of chance conducted by the Foundation are not exempt because the rent paid to the operator of the permit premises and the commission paid to the Foundation's sales representatives are violative of R.C. 2915.02(D)(2)(e). The trial court determined that R.C. 2915.02(D)(2)(e) is applicable not only to the remainder of R.C. 2915.02(D)(2), but to R.C. 2915.02(D)(1) as well. While this is not an altogether unreasonable conclusion, we must disagree. Subsection (D)(1) appears primarily aimed at schemes of chance such as that conducted by appellant. Subsection (D)(2) appears intended to address the annual or semiannual midway-style festivals promoted by many charitable organizations in Ohio. Under certain circumstances, both subsections allow charitable organizations exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code to conduct gambling without falling afoul of the general prohibition found in R.C. 2915.02(A). We interpret the statutes to give rise to two different exemptions for two different types of charitable fund-raising practices. While the prohibition of commissions and other payments found in R.C. 2915.02(D)(2)(e) could reasonably be applied to R.C. 2915.02(D)(1), if this prohibition were intended by the legislature to apply to all exempt activities, it would most rationally have been placed as a separate subsection, similar to R.C. 2915.02(E), barring the sale or lease of the right to conduct schemes of chance. Instead, the legislature placed the prohibition on commissions under (D)(2), and it cannot be taken to apply to (D)(1). This conclusion is strengthened by the inclusion of several duplicative provisions in (D)(1) and (D)(2): for example, each subsection contains its own separate bar against conduct of the described gambling within ten hours of a bingo game conducted for amusement. We,

therefore, find that R.C. 2915.02(D)(2)(e) is not intended as a restriction on R.C. 2915.02(D)(1).

■ The above conclusion, however, is not dispositive of this case, nor of the treatment to be accorded the "rent" paid by the Foundation to the permit holders. Although we adopt a slightly different analysis from the trial court because we do not find that, under the statute, a clear distinction can be made between "operation," "promotion," and "conduct" of schemes of chance, Freedom Road Foundation's activities nonetheless do not comport with the statute.

■ R.C. 2915.02(D)(1) specifically requires that "all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of scheme of chance are used by, or given, donated, or otherwise transferred to" a statutorily permissible organization.[1] Certainly some expenses associated with the conduct of the scheme of chance were contemplated by the legislature as allowable deductions: in this case, the $20 cost to the Foundation of its tip-tickets supplies would no doubt be permissible. The two debatable expense items in derogation of R.C. 2915.02(D)(1) are the twenty-five percent "rent" paid to the permit holder, and the ten percent commission paid to the Foundation's sales representatives. Without attempting to fathom any intended distinction between "operation" and "conduct" under the gambling statutes— "conduct" appears to encompass "operation" as defined under R.C. 2915.01, with the exception of the term "bingo operator," which is specifically defined—we must agree with the trial court that Freedom Road's attempt to deputize permit holders and their employees presents only token compliance with the requirements of R.C. 2915.02. It was conceded by appellant at trial that the Foundation retains no control over its "volunteers" in their activities selling tip-tickets in taverns. Furthermore, a logical paradox is created under this scheme, whereby the Foundation pays rent to itself in the form of its "volunteer" permit holders. Even if rent were an allowable expense under R.C. 2915.02(D)(1), a question on which we expressly reserve judgment, the enrollment of permit holders as "volunteers" in order to comply with R.C. 2915.02(D)(1), while simultaneously paying those "volunteers" a percentage of profits, is clearly not the type of expense contemplated by the legislature in granting this exemption from the general prohibition found under Ohio's gambling laws.

Because we find that "rent," as used in the factual context of this case, is not an allowable expense, we do not reach the question of whether the commission

---

1. There is no dispute in this case that the Freedom Road Foundation falls under the category described in I.R.C. 501(C)(3).

payments to the Foundation's sales representatives are permissible under the statute. Likewise, because the foregoing is conclusive with regard to appellant's first assignment of error, we do not reach the third basis of the trial court's decision, that declaratory judgment is an inappropriate remedy in this case. In accordance with the foregoing, appellant's first assignment of error is overruled.

█ Appellant's second assignment of error alleges that appellee's reluctant compliance with discovery requests led to "trial by ambush," with the department producing responses on the eve of trial, and failing to provide copies of trial exhibits until the trial itself. The trial court permitted introduction of the contested exhibits, consisting of canceled checks, because the absence of a jury reduced the risk of prejudice. Without making a determination of whether the trial court abused its discretion in its rulings on these discovery issues, we find that in any event, any alleged error was not prejudicial to the Foundation. The trial court's decision is based entirely upon an analysis of the statute as set forth in appellant's first assignment of error, and any allegations at trial regarding appellant's misuse of Foundation funds is merely peripheral to the principal issues in this case. We note that the trial court's reference to the contested exhibits is limited to a short footnote in the trial court decision. There is, therefore, no indication before us that the evidence objected to was prejudicial to appellant in the outcome of the trial. Appellant's second assignment of error is therefore overruled.

In accordance with the foregoing, appellant's first and second assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.