**LAVERY, d.b.a. Lavery's Pub, Appellant,**

v.

**OHIO LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *Lavery v. Ohio Liquor Control Comm.* (1996), 112 Ohio App.3d 494.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17541.

Decided July 10, 1996.

*Fawley & Associates* and *Kurt O. Gearhiser*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Barbara A. Serve*, Assistant Attorney General, for appellee.

---

BAIRD, Judge.

Plaintiff-appellant, Ramon Lavery, d.b.a Lavery's Pub ("Lavery"), presents this appeal from the judgment rendered in the Summit County Court of Common Pleas in favor of defendant-appellee, the Ohio Liquor Control Commission (the "OLCC"). We reverse.

Lavery was cited by agents of the OLCC for violating Ohio Adm.Code 4301:1-1-53. According to the record, on November 12, 1993, the agents entered Lavery's Pub, an establishment licensed by the OLCC to sell alcoholic beverages. The agents noticed customers purchasing and playing "tip tickets," which have been described as scratch-off or perforated game tickets, similar in many respects to "instant-winner" games sponsored by the Ohio Lottery Commission. A batch of tickets is printed, only some of which entitle the purchaser to cash or other prizes; the value of all prizes combined is less than the cost of purchasing every ticket in a batch. The agents purchased and played five such tickets from a vending machine. One of the tickets yielded a prize of $1, which the agents redeemed.[1] The agents then confiscated tickets, money, and records, alleging

---

1. The agents indicated in their report that they received their prize from a "barmaid," who they asserted was an employee of Lavery. The record does not provide any corroborating evidence to indicate that the "barmaid" was actually employed, or being paid by, Lavery. In fact, the testimony offered at the hearing held before the OLCC was that the barmaid was not

that the sale, playing, and payment of tip tickets was in violation of Ohio Adm.Code 4301:1–1–53 and, therefore, contrary to the terms of the license issued by OLCC to Lavery.

Lavery denied the allegations, contending that the tip ticket games were promoted and sold by, and all profit from them was remitted to, the Freedom Road Foundation ("Freedom Road"), a charitable nonprofit organization. Therefore, Lavery contends, there was no violation. The OLCC found that Lavery had violated Ohio Adm.Code 4301:1–1–53, and imposed a penalty of either a $1,000 fine or a ten-day liquor license suspension. Lavery appealed that decision to the trial court, which affirmed the decision of the OLCC. Lavery now presents this appeal, asserting three assignments of error, which we will consider together.

## I

"The Summit County Common Pleas Court erred when it found that the decision of the Liquor Control Commission was supported by reliable, probative and substantial evidence and was in accordance with law because the sale of a scheme of chance conducted by a charitable organization is specifically allowed by R.C. 2915.02 and Liquor Control Commission Regulation 4301:1–1–53."

## II

"The Summit County Common Pleas Court erred when it affirmed the order of the Liquor Control Commission because R.C. 2915.02 and Liquor Control Commission Regulation 4301:1–1–53 requir[e] proof that the scheme of chance was conducted for profit."

## III

"The Summit County Common Pleas Court erred when it affirmed the order of the Liquor Control Commission because the Liquor Control Commission found that appellant did permit or allow gaming or wagering on a game of skill or chance."

■ In reviewing an order of an administrative agency under R.C. 119.12, the common pleas court must affirm the agency's order unless it finds that the order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law. *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476; *Hall v. Ohio Bd. of*

---

actually on Lavery's payroll, but was strictly a volunteer present only to pay out prizes won by playing tip tickets.

*Landscape Architect Examiners* (1993), 91 Ohio App.3d 401, 403, 632 N.E.2d 954, 955.

In reviewing the decision of the trial court, we must determine whether the trial court abused its discretion.

"In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion." *Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 267.

"Abuse of discretion" connotes more than an error of law or judgment as it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205. In determining whether an abuse of discretion exists, a reviewing court should be guided by a presumption that the trial court was correct. *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185.

In its brief, the OLCC contends (A) that there is no need to demonstrate that a gambling offense as defined in the Revised Code occurred in order to find a violation of Ohio Adm.Code 4301:1–1–53, (B) that, even if it is necessary to show the occurrence of a gambling offense, there is evidence in the record to support a conclusion that such an offense was committed, and (C) that Lavery has not demonstrated that the sale of the tip tickets complied with the Revised Code's requirements for a scheme of chance conducted by a charitable organization and, thus, he cannot invoke such a defense. We reverse the trial court's judgment because (A) Ohio Adm.Code 4301:1–1–53 clearly requires the OLCC to show that a gambling offense occurred, (B) the record does not support a conclusion that all the elements of any gambling offense, as defined by the Revised Code, have been proven, and (C) the record supports Lavery's contention that the sale of the tip tickets was undertaken in conformity with the "charitable organization" exception.

In considering the issues raised by the parties, several distinctions become significant. One distinction is made throughout the relevant portions of the Revised Code between "schemes" of chance and "games" of chance. R.C. 2915.01(C) states that a " '[s]cheme of chance' means a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize." R.C. 2915.01(D) defines a "game of chance" as "poker, craps, roulette, a slot machine, a punch board, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance."

The essential difference appears to be that in a "scheme of chance," such as a raffle or lottery, there is a definite prize which will be awarded and the question of chance is which participant will win the prize; contestants in a "game of chance," like roulette or craps, are not guaranteed that any prize will be won by anyone. In addition, there are at least some elements of skill involved in most games of chance, whereas schemes of chance typically involve a blind choice by the purchaser. The two categories are treated separately throughout the Revised Code (see, *e.g.*, R.C. 2915.02[D][1] and [D][2]; R.C. 2915.04). The trial court concluded that the tip tickets "could be either a scheme of chance * * * and/or a game of chance[.]" We cannot agree. The tip tickets in question clearly fall within the category of a scheme of chance.[2]

There is also a distinction drawn between gambling conducted by nonprofit organizations and that carried on by other persons or entities. R.C. 2915.02(A)(2) states that "[n]o person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]" R.C. 2915.02(D)(1) through (3) grant nonprofit or charitable organizations the right to conduct gambling operations to raise revenue, an activity which is generally otherwise prohibited, provided certain conditions are met. Most significant among these conditions is a requirement that any profit beyond payment of prizes go only to charitable organizations.

I

(A)

■ The primary dispute in this case involves the difference in requirements, if any, for finding a violation of Ohio Adm.Code 4301:1–1–53 and its counterpart in R.C. 2915.01 *et seq.* Under the approach advocated by the OLCC, the two codes are subject to different standards.[3]

Ohio Adm.Code 4301:1–1–53 reads:

---

**2.** We note that other courts have also characterized tip tickets as schemes of chance. See *Robb v. Ohio Dept. of Liquor Control* (1994), 95 Ohio App.3d 379, 382, 642 N.E.2d 651, 653–654; *Brinkman v. Ohio Liquor Control Comm.* (May 10, 1995), Putnam App. No. 12–94–5, unreported, at 7, 1995 WL 274492; *Sermon v. Ohio Liquor Control Comm.* (July 20, 1995), Franklin App. No. 95APE01–18, unreported, at 5, 1995 WL 431129.

**3.** In a limited sense, this is correct; a violation of the Revised Code must be proven beyond a reasonable doubt, whereas a violation of the Administrative Code requires proof only by a preponderance of the evidence. However, this is not the "different standard" relied upon by the OLCC.

"(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited, or used in, upon or about the premises of the permit holder of [*sic*] any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code.

"* * *

"(D) This rule shall not be construed to prohibit a game or contest sponsored and conducted in accordance with division (D) of section 2915.02 of the Revised Code, provided that such game or contest strictly complies with all of the provisions of division (D) of section 2915.02 of the Revised Code[.]"

Conviction under Ohio Adm.Code 4301:1–1–53(B) clearly requires a finding not only that a permit holder permitted the presence of gambling devices on his premises, but also that those devices were used for gambling offenses. Gambling offenses are specifically referred to in Ohio Adm.Code 4301:1–1–53 as acts defined as gambling offenses by the Revised Code, specifically R.C. 2915.01(G).[4]

The OLCC has emphasized that there is a distinction between the criminal law and administrative requirements. While this is certainly true, in the case of the particular administrative regulation at issue, the language of the regulation itself requires proof of the elements of a criminal offense: it clearly states that a violation requires proof that the premises owner allowed on the permit premises "any gambling device as defined in [the Revised Code] which is or has been used for gambling offenses as defined in [the Revised Code]."

We note further that there appears to be a split of authority among the various courts of appeals as to whether finding a violation of Ohio Adm.Code 4301:1–1–53 requires proof of the same elements contained in R.C. 2915.02, specifically, whether the OLCC must prove not merely that a premises owner possessed gambling devices[5] on the permit premises, but also that the gambling devices were used for gambling offenses. Based on the facts of the case *sub judice,* we answer this question in the affirmative.

---

**4.** R.C. 2915.01(G)(1) lists those offenses which are considered "gambling offenses." Gambling offenses are violations of R.C. 2915.02 through 2915.11.

**5.** R.C. 2915.01(F)(2) states that a "ticket, token, or other device representing a chance, share, or interest in a scheme of chance" qualifies as a "gambling device." It is clear from the nature of tip tickets that they are indeed "gambling devices" as defined in this section of the Revised Code.

Our decision appears to be in conflict with the decisions of the appellate courts of Franklin,[6] Putnam,[7] Butler,[8] and Columbiana[9] Counties. In each of those cases, the courts held that mere possession of gambling devices on permit premises was sufficient to support a violation of Ohio Adm.Code 4301:1–1–53. Each of those cases also quoted and relied upon, either principally or in significant part, the decision rendered by the Franklin County Court of Appeals in *Mills–Jennings of Ohio, Inc. v. Ohio Liquor Control Comm.* (1984), 16 Ohio App.3d 290, 293, 16 OBR 321, 323–324, 475 N.E.2d 1321, 1324–1325, which states:

"Under Ohio Adm.Code 4301:1–1–53(B), it is the place of the possession of the devices, that is, *on permit premises,* that causes possession to be unlawful." (Emphasis *sic*.)

However, *Mills–Jennings* concerned the seizure of electronic video gambling machines, which were defined as "games of chance." Moreover, at the time the *Mills–Jennings* decision was rendered, Ohio Adm.Code 4301:1–1–53(B) contained substantially different language than it does now. Prior to 1988, Ohio Adm.Code 4301–1–1–53(B) read as follows:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon, or about the premises of the permit holder of [*sic*] any device, machine, apparatus, book, record, forms, tickets, papers, or charts which *may or can* be used for gaming or wagering[.]" (Emphasis added).

The emphasized language was replaced, effective May 16, 1988, with the words "is or has been." As the court recognized in *Lewis v. Ohio Dept. of Liquor Control* (Dec. 23, 1993), Tuscarawas App. No. 93–AP–060044, unreported, 1993 WL 544293, this change in terminology "makes clear [that] the intent behind the regulation is to require more than 'mere possession.'" It adds a further element of proof to the requirements for showing a violation, *i.e.,* it must now be shown that the devices have actually been used to commit a gambling offense, not merely that they could be.

---

**6.** *Loyal Order of Moose Lodge No. 1473 v. Ohio Liquor Control Comm.* (1994), 95 Ohio App.3d 109, 114, 641 N.E.2d 1182, 1185 (expressly rejecting argument that the state must prove gambling devices used for gambling offenses); *BPOE Lodge 0170 Gallipolis v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 811, 817, 596 N.E.2d 529, 533.

**7.** *Brinkman v. Ohio Liquor Control Comm.* (May 10, 1995), Putnam App. No. 12–94–5, unreported, at 5, 1995 WL 274492.

**8.** *Wieser v. Ohio Liquor Control Comm.* (Feb. 26, 1996), Butler App. No. CA95–10–174, unreported, at 8, 1996 WL 77893.

**9.** *Berdine v. Ohio Liquor Control Comm.* (Sept. 18, 1991), Columbiana App. No. 90–C–34, unreported, at 3–4, 1991 WL 184803.

502

Our decision appears to be in accord with that reached by the Ashtabula County Court of Appeals in *Ohio Liquor Control Comm. v. Lytle* (Feb. 6, 1987), Ashtabula App. No. 1246, unreported, 1987 WL 6237; we recognize, however, that that decision was, like *Mills–Jennings*, rendered prior to the amendment of the pertinent section of the Ohio Administrative Code. There appears to be support for both positions in decisions rendered by the Tuscarawas County Court of Appeals.[10]

## (B)

The OLCC did not specify, in determining that Lavery had violated Ohio Adm.Code 4301:1–1–53, which "gambling offense" was allegedly committed; presumably, this is a reflection of the OLCC's mistaken belief that no such offense need be shown. However, in its brief and at oral argument, the OLCC cited three specific sections of the Revised Code which, it alleges, were violated by Lavery's conduct. Specifically, the OLCC refers to R.C. 2915.02(A)(2), 2915.02(D)(2)(e), and 2915.02(E). We will address each of the alleged offenses in turn.

### (1) R.C. 2915.02(A)(2)

R.C. 2915.02(A)(2) states that no person may "[e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance *conducted for profit*[.]"[11] (Emphasis added.) The OLCC argues that, although the Revised Code requires that a profit by the premises owner be proven in order to constitute a criminal violation, no such profit need be shown in order for the OLCC to find a violation of Ohio Adm.Code 4301:1–1–53. The OLCC contends that a permit holder who allows the sale and playing of tip tickets on the permit premises is in violation of Ohio Adm.Code 4301:1–1–53(B), regardless of whether the permit holder makes a profit from such an enterprise.

Lavery, on the other hand, argues that (1) tip tickets are a scheme of chance, (2) the scheme of chance was conducted by Freedom Road, (3) Freedom Road is a nonprofit organization, and (4) Lavery never profited from the scheme of chance, but remitted all proceeds to Freedom Road. Therefore, Lavery contends, the "gambling devices" were not used for any "gambling offense" and, thus, there was no violation of Ohio Adm.Code 4301:1–1–53.

---

**10.** *LOOM Lodge 926 New Philadelphia, Inc. v. Ohio Liquor Control Comm.* (Feb. 9, 1995), Tuscarawas App. No. 94AP100070, unreported, 1995 WL 156402. But, see, contra, *Amvets Post 0123, Inc. v. Ohio Liquor Control Comm.* (Oct. 1, 1991), Tuscarawas App. No. 110062, unreported, 1991 WL 207893; *Lewis v. Ohio Dept. of Liquor Control* (Dec. 23, 1993), Tuscarawas App. No. 93–AP–060044, unreported, 1993 WL 544293.

**11.** We note that, were tip tickets considered to be a *game* of chance, Lavery's conduct might conceivably violate R.C. 2915.04(B), which makes it illegal for any owner of a public place of business to permit betting or games of chance. See *Dunn's Lane, Inc. v. Ohio Liquor Control Comm.* (Oct. 11, 1990), Franklin App. No. 89AP–1431, unreported, 1990 WL 152949. That section of the Revised Code, however, does not mention *schemes* of chance.

Insofar as the parties dispute whether "profit" must be shown to prove an administrative violation, then, that issue arises only as a result of the factual situation in this case, that is, because one of the required elements of a particular "gambling offense" which the OLCC claims is applicable to the specific scheme of chance conducted is a showing of profit.

R.C. 2915.02(A)(2) prohibits a person from conducting a scheme of chance for profit. However, R.C. 2915.02(C) and (D) provide that the prohibition against gambling for profit does not apply to gambling which is either "expressly permitted by law" or to "[s]chemes of chance conducted by a charitable organization * * * provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to [a charitable organization]." It is apparent, then, that unless the scheme of chance was conducted for profit by someone other than a charitable organization, no violation of R.C. 2915.02(A)(2) is committed. In other words, no "gambling offense" as defined in that statute has been committed and, consequently, no violation of Ohio Adm.Code 4301–1–53 premised on such an offense has occurred.

The OLCC also contends that Lavery and Freedom Road have failed to prove that their conduct was in strict compliance with the requirements for the charitable organization exception outlined in R.C. 2915.02(D). The trial court held that "there is insufficient evidence in the record that Freedom Road is a 501(c)(3) charitable organization."

The record in this case contained testimony, presented at the hearing before the OLCC, that Freedom Road, a charitable organization as defined by the Revised Code,[12] conducted, and was the only entity to receive any profit from, the sale of the tip tickets in question. The record is absolutely devoid of any evidence to the contrary. Despite the evidence presented as to Freedom Road's status, the OLCC did not allege, or present any evidence whatsoever, that Freedom Road is not a charitable organization as statutorily defined. Accordingly, the record does not support a finding that the tip tickets were sold in violation of R.C. 2915.02(A)(2), nor does it support the trial court's conclusion that there was insufficient evidence that Freedom Road Foundation was a charitable organization.

---

12. R.C. 2915.02(D)(1) describes those organizations which are exempt from the restrictions on gambling for profit, referred to as "charitable organizations." Among those listed are organizations "described in subsection 501(c)(3) * * * of the Internal Revenue Code." Significantly, although OLCC insists that Lavery bears the burden of establishing Freedom Road's status as a nonprofit organization, OLCC does not contend that Freedom Road is not such an entity.

### (2) R.C. 2915.02(D)(2)(e)

■ The OLCC also asserts that the barmaid who sold the tickets was violating R.C. 2915.02(D)(2)(e). That provision states:

"No person shall receive any commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, for operating or assisting in the operation of any scheme or game of chance."

This question requires a determination as to who, if anyone, actually "profited" from the sale of the tip tickets. R.C. 2915.02(A)(2) does not require that the *premises owner* be the one who profits from a scheme of chance in order for the conduct to be unlawful; the language of the statute merely states that "no person" shall conduct a scheme of chance for profit. If the "person" profiting from the scheme is a charitable organization as defined in the statute, then the prohibition against conducting a scheme of chance does not apply. However, in the context of the administrative violation, it is the "person authorized to sell alcoholic beverages," *i.e.,* the owner of the permit premises, who is liable if a violation is proven. Ohio Adm.Code 4301:1–1–53(B).

The OLCC contends that, since the barmaid was a paid employee of Lavery, she was (at least indirectly) receiving compensation for operating a scheme of chance. At the hearing conducted by the OLCC, Lavery presented the testimony of Lindy Douglas, president of Freedom Road. Douglas testified that (1) Freedom Road is a charitable organization as defined in subsection 501(c)(3) of the Internal Revenue Code, (2) all the tip tickets in question were bought and paid for, and the prize money paid out by, Freedom Road, (3) the tavern owners with which Freedom Road had arrangements voluntarily sold the tip tickets, and their employees were given an option to become volunteers of Freedom Road for purposes of selling the tickets (and those who wished to volunteer signed a written agreement),[13] (4) the barmaid described by the agents was not an employee but was, rather, "the bar owner's girlfriend * * * a strict volunteer [of Freedom Road]* * * that was not on payroll, all she did was pay off the tickets," and (5) "100 percent" of the proceeds and profits from the sale of the tip tickets were returned to Freedom Road by Lavery.[14]

---

**13.** Other courts, including the Butler County Court of Appeals in *Wieser v. Ohio Liquor Control Comm.* (Feb. 26, 1996), Butler App. No. CA95–10–174, unreported, 1996 WL 77893, have implied that, in order to qualify for the charitable-organization exemption, actual employees, rather than volunteers, of the organization must be responsible for the actual sale of the tickets. See, also, *Sermon v. Ohio Liquor Control Comm.* (July 20, 1995), Franklin App. No. 95APE01–18, unreported, at 9, 1995 WL 431129. We decline to adopt such a view.

**14.** In other cases, most notably *Robb v. Ohio Dept. of Liquor Control* (1994), 95 Ohio App.3d 379, 642 N.E.2d 651, Freedom Road apparently paid "rent" to the premises owner from the

The OLCC presented nothing at the hearing, or at any other time, to rebut Douglas's testimony. The transcript of that hearing was before the OLCC and the trial court, and is part of the record on appeal. As previously noted, the record does not conclusively support the OLCC's claim that the barmaid was, in fact, being paid by Lavery or anyone else. That consideration aside, the record is totally lacking any evidence to support the OLCC's claim that the barmaid was specifically being compensated *for selling tip tickets.* Rather, as Douglas's testimony at the hearing revealed, the woman had signed a form to volunteer for Freedom Road; there is nothing presented to rebut such a claim, nor is there any evidence that the woman was selling the tip tickets as a result, condition, or part of her duties as a barmaid, even assuming that she had any.[15]

The trial court found that "there is evidence that [the 'barmaid'] was both an employee of the permit holder and a volunteer for Freedom Road and being compensated for her work as a waitress/barmaid. In selling the tip tickets at the permit premises, it is the Court's opinion that she was acting as an employee of [Lavery] rather than a volunteer."

The record contains no mention whatsoever of any compensation paid by *anyone* to the barmaid; the *only* evidence regarding her compensation was Douglas's testimony that she was "not on payroll." The trial court's holding that the transcript supported the OLCC's determination that a violation of R.C. 2915.02(D)(2)(e) and, consequently, of Ohio Adm.Code 4301:1–1–53, had occurred is, therefore, not supported by the record.

(3)

■ The OLCC further contends that, even assuming that Freedom Road otherwise qualifies for the "charitable organization" exemption outlined in R.C. 2915.02(D)(1), it has forfeited the right to such an exemption by its delegation of the right to conduct the sale of tip tickets. In support of this claim, the OLCC cites R.C. 2915.02(E), which provides:

"Division (D) of this section shall not be construed to authorize the sale, lease, or other temporary or permanent transfer of the right to conduct schemes of chance or games of chance, as granted by division (D) of this section, by any charitable organization that is granted that right."

proceeds of the ticket sales. The OLCC admits, and the record in this case indicates, that Freedom Road has discontinued this practice.

**15.** In other cases, including *Wieser, supra,* there was testimony that premises employees had been coerced into selling the tickets by the premises owner; the barmaid who sold the tickets in that case stated that she was told by the tavern owner to sell the tickets or she would be fired. However, no such evidence appears in the record of this case.

The OLCC argues that, by using premises employees as "volunteers," Freedom Road is not actually "conducting" the sale of tip tickets, but is *de facto* transferring that function to the premises owner. However, the record does not indicate that any "transfer" of the *right* to conduct the sale of tip tickets was agreed upon or contemplated. Merely because Freedom Road used, as volunteers, persons who were also employed by the premises owner does not prove that the premises owner was given or transferred any rights.[16]

Moreover, R.C. 2915.01(T) defines "conduct" as "to back, promote, organize, manage, carry on, or prepare for the operation of a scheme or game of chance[.]" Given this definition, it does not appear from the record that Freedom Road Foundation was not "conducting" the sale of the tip tickets. Though the trial court did not explicitly base its decision on this argument, the record does not support a finding that R.C. 2915.02(E) was violated.

## II

Accordingly, we hold that, for purposes of the scheme of chance at issue in this case, a violation of Ohio Adm.Code 4301:1–1–53 requires proof that the gambling devices were used on the permit premises for gambling offenses and that, by its own terms, that same administrative regulation requires proof by the OLCC of the elements of one or more of the gambling offenses defined in R.C. 2915.02 through 2915.11, inclusive. We decline to hold that a charitable organization which conducts such schemes of chance must have its own paid employees present, absent evidence to support a contention that the employees of the premises owner were not conducting the scheme as volunteer members of the charitable organization and remitting all proceeds and profits to the charitable organization.

The OLCC determined that Lavery was in violation of Ohio Adm.Code 4301:1–1–53. The subsequent decision by the trial court, which found that the OLCC's ruling was supported by reliable, substantial, probative evidence and in accordance with law, is not supported by the record and constitutes an abuse of discretion. Accordingly, the judgment of the trial court is reversed.

*Judgment reversed*
*and cause remanded.*

SLABY, J., concurs separately.

QUILLIN, P.J., dissents.

---

**16.** See, generally, *Freedom Road Found. v. Ohio Dept. of Liquor Control* (Mar. 14, 1996), Franklin App. No. 95APE08–1030, unreported, 1996 WL 112643, appeal pending, case No. 96–1006.

SLABY, Judge, concurring.

I concur, but write separately to distinguish this case from *Gran of Akron, Inc. v. Ohio Liquor Control Comm.* (1996), 112 Ohio App.3d 487, 679 N.E.2d 53.

My opinion in *Gran* rested upon the control that the bar owner could exercise over the sale of the tip tickets through its control over its employee, the bartender who was responsible for selling the tickets. Where the bar owner or bartender can control or manipulate sales to benefit the bar operations or the bartender personally, the scheme of chance is not being "conducted by" the charitable organization. In contrast, in the case *sub judice*, the girlfriend of the bar owner had no control over the sales; instead, she participated in the scheme only to pay out the proceeds on the winning tickets. The fact that she was not an employee also more readily permits the inference that she was acting as a volunteer, and not as an agent of the bar. The distinction is in who or what is physically making the sale.

The facts of this case are distinct from *Gran;* however, I am compelled to express my concern that the law, as written, condones conduct that has as its primary purpose an insufficient relationship to charitable purposes to justify exception from the gambling prohibitions. The legislature has opened the door to legalized gambling in liquor establishments. The sale of tip tickets by a true volunteer for a charitable organization at a fundraiser is likely to be legitimate. When sold via a machine in a liquor establishment, there seems little distinction between the tip ticket machine and a slot machine, unquestionably an illegitimate gambling device. It is with reluctance that I apply the charitable organization exception to sales of tip tickets via a machine in a bar.