OPINION
{¶ 1} Appellants, John and Nancy Dittleberger, appeal from the October 30, 2001 decision and judgment entry of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("Commission") suspending appellants' liquor license for 30 days. For the following reasons, we affirm the decision of the trial court.
{¶ 2} John and Nancy Dittleberger own and operate a bar in Cincinnati, Ohio known as Dittlebergers' Pub. On April 21, 2000, liquor agents Andrew Alanis and Eric Johnson entered Dittlebergers posing as patrons. The agents observed two bins of tip tickets, a sign that read "Bountiful Blessings Ministries Charity," and a tip ticket pay out schedule hanging behind the bar. The barmaid, Jamie Wells, explained to the agents that if certain symbols on the tickets matched then prizes on the pay-out schedule would be paid. The agents paid $8 for four tickets and lost. Wells did not record the sale.
{¶ 3} About one hour later, the agents heard screaming from the pool table area, and observed two female patrons (Diane Luckey and Susie Holbrock) in a physical altercation. The agents asked Wells what was going on. Wells stated that she did not know, ignored the altercation, and continued to clean the bar area. A male patron unsuccessfully tried to restrain Luckey. Several minutes later, Wells tried to restrain Holbrock but was unsuccessful. The physical altercation escalated when Luckey threw a pool ball that struck Holbrock in the abdomen. Luckey then broke a cue stick and attempted to stab Holbrock. At no time, did Wells attempt to call the police. Holbrock grabbed the cue stick from Luckey, pinned her against the pool table, and began hitting Luckey in the face. At this point, Wells yelled to the women to get out of the bar and that she was calling the police.
{¶ 4} The police entered Dittlebergers' Pub and cleared the patrons out of the bar. Agents Alanis and Johnson left and later re-entered the bar and identified themselves to Wells and advised Wells that permitting fighting in the bar was a violation of the liquor laws. Wells telephoned the owner, Nancy Dittleberger. The agents conducted an administrative inspection of the premises. When the agents inquired, Wells was unable to produce records for the tip tickets. She further told the agents that she never called the police when fights occurred because the police took too long to respond to the calls. Upon further investigation of the establishment, the agents discovered insects in several liquor bottles.
{¶ 5} When Nancy Dittleberger arrived at the bar, she agreed with Wells that the response time for the police was slow and that is why they are not phoned when fights occur. Also, Nancy Dittleberger was unable to produce records for the periods of March 31, 2000 to April 21, 2000 showing that the proceeds of the tip ticket gambling went to charity.
{¶ 6} The Superintendent of the Division of Liquor Control advised appellants that the Commission would be holding a hearing to determine if any action would be taken against appellants' liquor license for the following violations:
{¶ 7} "Violation #1 — On April 21, 2000, your agent and/or employee, Jamie Wells and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agent and/or employee and/or your unidentified agent and/or employee, did allow fights and brawls — in violation of 4301:1-1-52 a regulation of the Ohio Administrative Code.
{¶ 8} "Violation #2 — On April 21, 2000, your permit premises were in an unsanitary condition, to wit, gnats and/or debris in liquor bottles — in violation of 4301:1-1-17 a regulation of the Ohio Administrative Code.
{¶ 9} "Violation #3 — On April 21, 2000, your agent and/or employee, Jamie Wells and/or your unidentified agent and/or employee, did permit and/or allow in and upon the permit premises, gaming on a game and/or scheme of skill and/or chance, to wit, tip tickets — in violation of 4301:1-1-53 a regulation of the Ohio Administrative Code.
{¶ 10} "Violation #4 — On April 21, 2000, your agent and/or employee, Jamie Wells, and/or your unidentified agent and/or employee, did permit and/or allow in and upon the permit premises, gaming on a game and/or scheme of skill and/or chance, to wit, failure to maintain charitable records — in violation of 4301:1-1-53 a regulation of the Ohio Administrative Code." (State of Ohio, Department of Public Safety/Liquor, Columbus, Ohio, Notice of Hearing.)
{¶ 11} A hearing was held on November 8, 2000 before the Commission. Only appellant Nancy Dittleberger appeared at the hearing. Nancy Dittleberger entered a denial of the violations, but stipulated to the investigator's report. In exchange, the state dismissed violations two and four. On December 14, 2000, the Commission mailed an order suspending appellants' liquor license for 30 days for violating Ohio Adm. Code 4301:1-1-52 and 4301:1-1-53.
{¶ 12} On October 30, 2001, the trial court affirmed the Commission's order suspending appellants' liquor license. The trial court held that both violations were proved by substantial, reliable, and probative evidence. It is from that decision and judgment entry that appellants appeal, assigning the following sole assignment of error:
{¶ 13} "The order of the Liquor Control Commission was not supported by reliable, probative and substantial evidence and was not in accordance with law."
{¶ 14} Appellants have appealed pursuant to R.C. 119.12. R.C. 119.12
provides the following standard of review for the common pleas court:
{¶ 15} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."
{¶ 16} In Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, the Ohio Supreme Court set forth the following standard of review for an appellate court in reviewing a judgment of the trial court which determines an administrative appeal:
{¶ 17} "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion " `* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986), 22 Ohio St.3d 191, 193 * * *. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See Rohde v. Farmer (1970),23 Ohio St.2d 82 * * *.
{¶ 18} "The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."
{¶ 19} In Our Place, Inc. v Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the Ohio Supreme Court defined the evidence required by R.C. 119.12 as:
{¶ 20} "(1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." (Fn. omitted.)
{¶ 21} Thus, this court's standard of review is limited to whether the trial court abused it discretion in finding the Commission's order was supported by reliable, probative and substantial evidence or that it was in accordance with law.
{¶ 22} In this case, appellants' liquor license was suspended for 30 days for two reasons. First, the Commission determined that Wells, an agent or employee of appellants, knowingly and/or willfully allowed fighting among the patrons to occur in and upon appellants' premises in violation of Ohio Adm. Code 4301:1-1-52 ("Regulation 52"), which defines disorderly activities as activities:
{¶ 23} "(2) * * * that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls."
{¶ 24} Appellants allege that the Commission erred in finding a violation of Regulation 52 because the evidence showed that Wells did not knowingly and/or willfully allow the fights to occur. Appellants contend that Wells took reasonable action to stop the fighting, and at the point she realized that she could not gain control, Wells telephoned the police.
{¶ 25} At the Commission hearing, Nancy Dittleberger testified that "[i]f anybody throws a punch or anything, we automatically — you know, if you can't stop it right away, get the police called, and they're out." (Tr. 10.)
{¶ 26} Wells testified that:
{¶ 27} "When I first noticed it, I went back [to the pool table area]. * * * I went back and I told them, if it keeps going on, you're both out of here. * * *
{¶ 28} "* * *
{¶ 29} "So after I told them to calm down, everything seemed to be okay." (Tr. 11-12.) Wells further stated she walked back in the pool table area again when she heard the women getting louder. Wells testified that "[b]y the time I got back behind that bar, they were swinging and pool balls were being thrown. So I knew I couldn't control it. I'm not going to get myself hurt. I have two little kids to go home to." (Tr. 13.) Wells stated that she called the police when she noticed that she could not control the fight.
{¶ 30} Agent Andrew Alanis testified that "we asked [Wells] what is going on over there in the corner when we heard the yelling of voices, when we saw what appeared to be fists being thrown; and she did not look over her shoulder. She just said, I don't know, and continued to look the opposite direction.
{¶ 31} "The fight did persist for several minutes before any bar personnel interjected and before there was any attempt made to contact uniformed police division." (Tr. 17.)
{¶ 32} Sergeant Dominic Gulliford, undercover police officer posing as a patron on the date of the incident, testified that "* * * the fight was going on 10 to 15 minutes. In that time frame [Wells] did come back. Later on into the fight — and I actually thought she was going to try and break it up at first. At that point she had not called the police. That's the thing that concerned me.
{¶ 33} "She tried to break it up. And then I guess when the pool balls were being thrown, one almost hit her, and then she got involved in the fight verbally and by moving people around. There was also another female * * * that tried to break it up. * * *
{¶ 34} "Once [Wells] saw she couldn't control it and she was involved in the fight, that's when she went and called the police. But the fight had taken place and she previously got involved." (Tr. 18-19.)
{¶ 35} The language of Regulation 52 clearly prohibits, among other things, an employee from knowingly and/or willfully allowing patrons to fight in the establishment. The language clearly states that "no permit holder, his agent or employee" shall knowingly or willfully allow the prohibited activities. Regulation 52 permits a finding of a violation where only an employee or agent of the permit holder knowingly allows certain activities on the permit premises. Therefore, in order to find a violation, it is unnecessary that the permit holder himself or herself participate in or be aware of the prohibited activity. The evidence and testimony shows that Wells had knowledge of the altercation and knowingly allowed the patrons to continue to fight before taking any action to control it, or contact the police.
{¶ 36} Additionally, appellants' liquor license was also suspended for 30 days because the Commission determined that appellants maintained tip tickets on the premises in violation Ohio Adm. Code 4301:1-1-53, which states:
{¶ 37} "(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
{¶ 38} R.C. 2915.01(F) defines "Gambling device" as:
{¶ 39} "(2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet[.]" (Emphasis added.)
{¶ 40} "Scheme of chance" is defined in R.C. 2915.01(C) as:
{¶ 41} "* * * [A] lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize."
{¶ 42} Furthermore, our court described tip tickets as "games comparable to the instant winner games conducted by the Ohio Lottery Commission." Robb v. Ohio Dept. of Liquor Control (1994),95 Ohio App.3d 379, 381.
{¶ 43} In this case, appellants allege that there was no evidence or testimony that appellants knowingly violated Ohio Adm. Code 4301:1-1-53. At the Commission hearing, Nancy Dittleberger testified that she believed that she was in full compliance with the laws regarding tip ticket sales. (Tr. 7.) While appellants allege that they were in full compliance, and the proceeds from the tip ticket sales went to the charitable organization, Bountiful Blessings Ministries Charity, appellants offered no proof of a charitable exemption.
{¶ 44} Charitable organizations can conduct schemes of chance, provided the organization is in compliance with R.C. 2915.02(D), in that the organization uses, gives, donates, or transfers to a charitable organization, all of the money or assets received from the scheme of chance after a deduction of the prizes paid. R.C. 2915.02(D)(1). The exemption for charitable organizations under R.C. 2915.02(D) does not apply to a barmaid who conducted the sale of tip tickets on the permit premises. Wieser v. Ohio Liquor Control Comm. (Feb. 26, 1996), Butler App. No. CA95-10-174. Since Wells, and not Bountiful Blessings Ministries Charity, conducted the sale of the tip tickets to the liquor agents, the exemption under R.C. 2915.02(D) does not apply. As appellants were unable to prove a charitable exemption under R.C. 2915.02(D), the trial court properly determined that appellants violated Ohio Adm. Code 4301:1-1-53. See Sermon v. Ohio Liquor Control Comm. (July 20, 1995), Franklin App. No. 95APE01-18 ("[t]he charitable organization, not the permit holder, must operate the scheme of chance to satisfy the requirements of the exception provided by R.C. 2915.02[D]" including the sale of tip tickets).
{¶ 45} Given all of the above, we cannot find that the trial court abused its discretion or otherwise erred as a matter of law in determining that the Commission's order was supported by reliable, probative and substantial evidence and was in accordance with law. Lastly, this court has no authority to vacate, reverse, or modify the sanction lawfully imposed by the Commission. Henry's Café, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233. Accordingly, appellants' sole assignment of error is not well-taken and is overruled.
{¶ 46} For the foregoing reasons, appellants' sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.