GRAN OF AKRON, INC., Appellee,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellant.

[Cite as *Gran of Akron, Inc. v. Ohio Liquor Control Comm.* (1996), 112 Ohio App.3d 487.]

No. 17469.

Court of Appeals of Ohio,
Ninth District, Summit County.

Decided July 10, 1996.

488

*Fawley & Associates* and *Kurt O. Gearhiser,* for appellee.

*Betty D. Montgomery,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellant.

*Per Curiam.*

Appellant, the Ohio Liquor Control Commission ("OLCC"), presents this appeal from the judgment rendered in the Summit County Court of Common Pleas in favor of appellee, Gran of Akron, Inc. ("Gran"). We reverse.

Gran was cited by agents of the OLCC for violating Ohio Adm.Code 4301:1–1–53. According to the record, on November 26, 1993, the agents entered DJ's Lounge, an establishment licensed by the OLCC to sell alcoholic beverages. The agents noticed customers who were purchasing and playing "tip tickets," game tickets that are similar to the "instant-winner" game tickets sponsored by the Ohio Lottery Commission. The agents purchased two tickets from a barmaid. The barmaid regularly worked as an employee, but had signed a statement indicating that she was acting as a volunteer for the Freedom Road Foundation ("Freedom Road"), a charitable nonprofit organization. The agents then confiscated all tickets, pay stubs, money, and records on the premises and cited Gran for the liquor license violation.

Gran denied the allegations. It contended that there was no violation because the tip ticket games were promoted and sold by, and all profit from them remitted to, Freedom Road. The OLCC disagreed and imposed a penalty of either a $1,500 fine or a fifteen-day liquor license suspension for violation of Ohio Adm.Code 4301:1–1–53. Gran appealed that decision to the trial court, which, agreeing with Gran, overturned the decision on the basis that Freedom Road had received all proceeds from the sale of the tickets. The OLCC appeals and assigns one error:

"The Summit County Common Pleas Court did error [*sic* ] when it found that the order of the [OLCC] is not supported by reliable, probative evidence and [is] not in accordance with law[.]"

In reviewing an order of an administrative agency such as the OLCC, the common pleas court's standard of review generally requires the court to affirm the agency's order unless it finds that the order is not supported by reliable, probative, and substantial evidence and is not in accordance with the law. R.C. 119.12; *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476. Our review of the trial court's decision is more limited. We can reverse the trial court only if it abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268. "Abuse of discretion" connotes more than an error of law or judgment as it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205.

This case is controlled by Ohio Adm.Code 4301:1–1–53 and its counterpart in the Ohio Revised Code, R.C. 2915.01 *et seq.* The OLCC contends that the trial

court erred in requiring proof of a gambling offense in order to sustain a conviction under the Administrative Code; that, in any event, there was evidence of a gambling offense sufficient to sustain the conviction; and, finally, that the court erred in finding that the operation was conducted by a charitable organization pursuant to the statutory exception. We disagree with the OLCC's contention that a gambling offense is not required to be proven, but we agree that there was evidence of a gambling offense and that the trial court's application of R.C. 2915.02(D), the "charitable organization exception," to the facts in this case was an abuse of discretion.

Ohio Adm.Code 4301:1–1–53 reads:

"(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of [*sic*] any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code.

" * * *

"(D) This rule shall not be construed to prohibit a game or contest sponsored and conducted in accordance with division (D) of section 2915.02 of the Revised Code, provided that such game or contest strictly complies with all of the provisions of division (D) of section 2915.02 of the Revised Code[.]"

There is a split of authority among the various courts of appeals as to whether Ohio Adm.Code 4301:1–1–53 requires proof of the same elements as R.C. 2915.02 *et seq.*, specifically, whether the OLCC must prove not merely that a premises owner possessed gambling devices[1] on the permit premises, but also that the gambling devices were used for gambling offenses. The appellate courts of Franklin,[2] Putnam,[3] Butler,[4] and Columbia[5] counties have held that mere

---

1. R.C. 2915.01(F)(2) states that a "ticket, token, or other device representing a chance, share, or interest in a scheme of chance" qualifies as a "gambling device." It is clear from the nature of "tip tickets" that they are indeed "gambling devices" as defined in this section of the Revised Code.

2. *Loyal Order of Moose Lodge No. 1473 v. Ohio Liquor Control Comm.* (1994), 95 Ohio App.3d 109, 114, 641 N.E.2d 1182, 1185 (expressly rejecting argument that the state must prove gambling devices used for gambling offenses); *BPOE Lodge 0170 Gallipolis v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 811, 817, 596 N.E.2d 529, 533.

3. *Brinkman v. Ohio Liquor Control Comm.* (May 10, 1995), Putnam App. No. 12–94–5, unreported, at 5, 1995 WL 274492.

4. *Wieser v. Ohio Liquor Control Comm.* (Feb. 26, 1996), Butler App. No. CA95–10–174, unreported, at 8, 1996 WL 77893.

5. *Berdine v. Ohio Liquor Control Comm.* (Sept. 18, 1991), Columbiana App. No. 90–C–34, unreported, at 3–4, 1991 WL 184803.

possession of gambling devices on permit premises was sufficient to support a violation of Ohio Adm.Code 4301:1–1–53. Each of those cases also quoted and relied upon, either principally or in significant part, the decision rendered by the Franklin County Court of Appeals in *Mills–Jennings of Ohio, Inc. v. Liquor Control Comm.* (1984), 16 Ohio App.3d 290, 293, 16 OBR 321, 323, 475 N.E.2d 1321, 1324, which stated:

"Under Ohio Adm.Code 4301:1–1–53(B), it is the place of the possession of the devices, that is, *on permit premises,* that causes possession to be unlawful." (Emphasis *sic.*)

We do not find *Mills–Jennings* to be persuasive. That case concerned the seizure of electronic video gambling machines, which were defined as "games" of chance. Moreover, at the time the *Mills–Jennings* decision was rendered, Ohio Adm.Code 4301:1–1–53(B) contained substantially different language than it does now. Prior to 1988, Ohio Adm.Code 4301:1–1–53(B) read as follows:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon, or about the premises of the permit holder of [*sic* ] any device, machine, apparatus, book, record, forms, tickets, papers, or charts which *may or can* be used for gaming or wagering[.]" (Emphasis added.)

The emphasized language was replaced, effective May 16, 1988, with the words "is or has been." As the court recognized in *Lewis v. Ohio Dept. of Liquor Control* (Dec. 23, 1993), Tuscarawas App. No. 93–AP–060044, unreported, 1993 WL 544293, the change in terminology "makes clear the intent behind the regulation is to require more than 'mere possession.' "[6] It adds a further element of proof to the requirements for showing a violation, *i.e.,* it must now be shown that the devices have actually been used to commit a gambling offense, not merely that they could be.

We hold, therefore, that proof of both possession of a gambling device as well as its actual use for a gambling offense as defined in the code is necessary to show a violation of Ohio Adm.Code 4310:1–1–53. Our decision is in accord with that reached by the Ashtabula County Court of Appeals in *Ohio Liquor Control Comm. v. Lytle* (Feb. 6, 1987), Ashtabula App. No. 1246, unreported, 1987 WL 6237; we recognize, however, that that decision was, like *Mills–Jennings,* ren-

---

**6.** See, also, *Amvets Post 0123, Inc. v. Ohio Liquor Control Comm.* (Oct. 1, 1991), Tuscarawas App. No. 110062, unreported, 1991 WL 207893; but, see, *Loyal Order of Moose Lodge 926 New Philadelphia, Inc. v. Ohio Liquor Control Comm.* (Feb. 9, 1995), Tuscarawas App. No. 94AP100070, unreported, 1995 WL 156402.

dered prior to the amendment of the pertinent section of the Ohio Administrative Code.

■ Having determined that proof of a gambling offense was necessary in this case, we turn to the record to see whether the evidence supported the OLCC's conclusion that a violation occurred. The OLCC alleges that Gran violated three separate sections of the Revised Code, including R.C. 2915.02(A)(2). Because we find that the evidence supported a finding that Gran violated R.C. 2915.02(A)(2), we address only that offense.

The primary point in contention between the parties regarding violation of R.C. 2915.02(A)(2) and Ohio Adm.Code 4301:1–1–53 is whether the OLCC was required to prove that Gran received a profit from the "tip ticket" sales. Gran argues that (1) the tip tickets were a scheme of chance; (2) the scheme of chance was conducted by Freedom Road; (3) Freedom Road was a nonprofit organization; and (4) Gran never profited from the scheme of chance, but remitted all proceeds to Freedom Road. Therefore, Gran contends, the "gambling devices" were not used for any "gambling offense," and thus there was no violation of Ohio Adm.Code 4301:1–1–53. The OLCC contends that a permit holder who allows the sale and playing of tip tickets on the permit premises is in violation of Ohio Adm.Code 4301:1–1–53(B), regardless of whether the permit holder makes a profit from such an enterprise.

Ohio Adm.Code 4301:1–1–53(B) sets forth the general rule that gambling, as defined in R.C. 2915.01(G), in liquor establishments is prohibited. R.C. 2915.01(G) defines a gambling offense as including a violation of R.C. 2915.02. R.C. 2915.02(A)(2) prohibits "conduct that facilitates any scheme * * * of chance conducted for profit." "Conduct" is "to back, promote, organize, manage, carry on, or prepare for the operation of a scheme * * * of chance." [7] R.C. 2915.01(T). The phrase "conducted for profit" modifies "scheme of chance"; thus, the profit requirement does not necessarily attach to the person being charged with the violation. This is consistent with the concept that a facilitator of a gambling operation is as culpable as the person actively conducting the operation. The issue of profit arises, therefore, not in the context of the general offense; instead, it arises in the application of the charitable-organization exception. Because the absence of Gran's profit appears to have been the sole obstacle to a determination that Gran violated the Administrative Code in this case, it follows from our

---

7. The parties agree that the sale of the tip tickets constituted a "scheme of chance" rather than a "game of chance." See R.C. 2915.01(C) and 2915.01(D). The two categories are treated separately throughout the Revised Code.

conclusion, as a matter of law, that the evidence supported the OLCC's determination that Gran committed the offense. The question left to be decided is whether the charitable-organization exception applies.

Subsection (D) of Ohio Adm.Code 4301:1–1–53 excepts charitable organizations from the gambling prohibition provided there is *strict* compliance with R.C. 2915.02(D). The pertinent provisions of division (D) allow schemes of chance conducted for profit if (1) the scheme of chance is *conducted by* (2) a tax-exempt charitable organization described in subsection 501(c)(3) of the Internal Revenue Code and (3) all money or assets received from the scheme of chance are used by or transferred to such an organization. Our focus under the first element must be upon the bar's conduct: if the bar's involvement constituted "conduct" that facilitated the scheme of chance, then the applicability of the exception is negated.

In the instant case, the trial court found that the charitable organization exception applied because all of the money received from the sale of the tip tickets went to Freedom Road, a 501(c)(3) tax-exempt organization. That is not dispositive in light of the evidence in the record that Gran actually "conducted" the sale of the tickets as that term is defined in the Revised Code. The tip tickets were sold on Gran's premises by its employee (a barmaid) during regular business hours. The fact that the barmaid signed a piece of paper stating that she had been acting as a volunteer for Freedom Road does not overcome the realities of that situation. While the barmaid was free to volunteer her time outside her employment, in the course of her employment she was an agent of the bar. The bar could control and direct her activity. She could be expected to promote ticket sales to individuals if ticket sales would benefit the bar, either directly or indirectly. These circumstances support the conclusion that the scheme of chance was, in reality, not conducted by Freedom Foundation, but by Gran.

Because there was sufficient reliable and probative evidence to support the decision of the OLCC that Gran conducted the scheme of chance, the trial court's reversal of the OLCC's decision based upon application of the charitable-organization exception was erroneous. We find that the trial court abused its discretion by substituting its own findings of fact and liberally construing the charitable-organization exception so as to require reversal of the OLCC's decision. Accordingly, the OLCC's assignment of error is well taken.

The judgment of the trial court is reversed and the cause is remanded to the trial court for entry of judgment affirming the decision of the Ohio Liquor Control Commission.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and SLABY, J., concur.

BAIRD, Judge, dissenting.

In my opinion, the realities of the situation do not equate to the scheme being conducted only by Gran; particularly in view of the expansive definition of "conducted" provided by the statute, I believe that the scheme was conducted by the charitable organization.

Though I concur with much of the balance of the majority's opinion, my inability to indulge in the majority's construction of the charitable-organization exception leads me to a contrary result and requires a dissent.