[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
VFW Post 7262 appeals from a Darke County Common Pleas Court judgment entry affirming a Liquor Control Commission (LCC) order finding a violation of O.A.C. 4301:1-1-53.
The VFW Post advances two assignments of error. First, it contends the trial court erred by finding reliable, probative, and substantial evidence to support the LCC's order. Next, the VFW Post claims the trial court erred by affirming the LCC's imposition of a one-hundred-day liquor license suspension or a $20,000 fine.
The present appeal stems from a visit to VFW Post 7262 made by LCC agent Carlos Bowman and Greenville police officer William Holmes pursuant to a gambling complaint. The two men rang the door buzzer on the evening of December 6, 1996, identified themselves, and advised a barmaid and manager that they were conducting an administrative search. Agent Bowman then observed five electronic video gambling machines along a wall. The machines were lighted and appeared operational. Four of the machines displayed credits. All five machines were being played when Bowman and Holmes arrived. Two patrons stated that they had been receiving four credits for each $1.00 they placed into the machines. Bowman and Holmes also observed several plastic containers of "tip tickets" and tip ticket payoff schedules. Additionally, they discovered a trash can with numerous used tip tickets. The agents also saw a punch board and clipboards for daily and weekly drawings. The agents did not observe anyone purchasing tip tickets or receiving a payoff from the tickets or electronic machines.
Based upon these observations, the investigators issued a violation notice. Thereafter, the VFW Post appeared for a hearing before the LCC on four counts of violating O.A.C. 4301:1-1-53. The counts stemmed from the investigators' observation of (1) the electronic gambling machines, (2) tip tickets, (3) the daily/weekly drawing evidence, and (4) the punch board. After the latter two charges were dismissed, the LCC found the VFW Post in violation of O.A.C. 4301:1-1-53 for the counts involving the electronic gambling machines and the tip tickets. The LCC suspended the VFW Post's liquor permit for 100 days but gave the Post the option of paying a $20,000 fine instead.
The VFW Post subsequently appealed the LCC's ruling to the Darke County Common Pleas Court, which affirmed the ruling, finding it supported by reliable, probative, substantial evidence and in accordance with the law. The VFW Post then filed a timely notice of appeal challenging the common pleas court's decision. The Post advances the following two assignments of error:
I.
 The Darke County Common Pleas Court erred when it affirmed the Liquor Control Commission finding reliable, probative, and substantial evidence to support a violation of Liquor Control Commission 4301:1-1-53.
In its first assignment of error, the VFW Post contends the trial court erred by finding reliable, substantial, and probative evidence to support the LCC's determination that it violated O.A.C. 4301:1-1-53. Specifically, the Post challenges the trial court's finding that "[w]hile the agents did not see anyone receive any money from the gambling devices, the agents could reasonably conclude that the gambling devices were being used." The VFW Post argues that a mere inference of use does not equal a violation of O.A.C. 4301:1-1-53.
We begin our analysis with a review of O.A.C. 4301:1-1-53, which provides in relevant part:
 "(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
The parties do not dispute that electronic video gambling machines are "gambling devices." Nor do the parties dispute that "tip tickets" are gambling devices. As we recently recognized, however, in Hurt v. Ohio Liquor Control Comm. (Nov. 26, 1997), Montgomery App. No. 16232, unreported, "[t]here is no violation of [O.A.C. 4301:1-1-53] unless the device `is or has been used for a gambling offense.'" In that opinion, we noted that the regulation's language changed in 1988. Prior to the change, O.A.C.4301:1-1-53 prohibited devices "which may or can be used for gaming or wagering." The present rule, however, requires a showing that a device is or has been used to commit a gambling offense. Consequently, we reasoned in Hurt, supra, that the state must show "`that the devices have actually been used to commit a gambling offense, not merely that they could be.'" Id., quoting Gran ofAkron, Inc. v. Ohio Liquor Control Comm. (1996), 112 Ohio App.3d 487,
In the present case, the VFW Post suggests that the trial court erred by finding a violation of O.A.C. 4301:1-1-53 despite a lack of evidence indicating that the tip tickets and video games had been used to commit a gambling offense. The VFW Post argues that the trial court improperly affirmed the LCC's findings based only upon evidence that it possessed gambling devices. In support, the VFW Post reasons:
 "In the case at bar the court below affirmed even though there was insufficient evidence to demonstrate that appellant violated [O.A.C. 4301:1-1-53]. The facts of the case show that the agents found tip tickets on the premises and patrons playing other gambling devices. That is all of the evidence. The agents did not witness any payoffs The agents did not see anyone inserting money into the devices nor did the agents produce any evidence of profit. The agents did not have any proof that anyone bet or wagered money or that anyone could win anything of value."
Appellant's Brief at 6-7.
After reviewing the record, we find the VFW Post's argument unpersuasive. The record reflects that Bowman and Holmes observed several containers of unused tip tickets and a trash can containing opened tip tickets. The men also observed tip ticket payoff schedules. In our view, these observations constitute evidence to support a finding that gambling devices were being used on the premises. Although the men failed to observe any patrons opening tip tickets or redeeming wining tickets, the circumstances support an inference that tip-ticket gambling had occurred on the premises. Furthermore, the presence of payoff schedules refutes the VFW Post's contention that no evidence suggested patrons could win anything of value. Finally, the VFW Post suggests the record is devoid of evidence indicating that any gambling was "for profit," which is an element of statutory gambling offenses. As the appellee properly notes, however, the record contains a report from agent Bowman. The report includes a description of "tip ticket" gambling and states: "Tip Tickets regardless of type are cashed in through the bartender or barmaid. They also are produced in such a way that profit is guaranteed. Losing tickets outnumber the winning tickets, assuring purchase monies more than pay-outs." In light of this statement, we find evidence in the record to support a finding that the tip-ticket gambling was "for profit."
Although our decision concerning the tip tickets alone supports the LCC's imposition of its sanctions, the record also demonstrates that the patrons' use of electronic gambling machines violated O.A.C. 4301:1-1-53. Upon their entry, Bowman and Holmes observed five lighted, operational electronic gambling machines. Two patrons playing the machines stated that they had been receiving four credits for each dollar they inserted into the machine. Combined, the five machines registered more than 1,800 credits. Nevertheless, the VFW Post argues that no gambling violation occurred because the state presented no evidence of a profit. In State v. Posey (1988), 40 Ohio St.3d 420, however, the Ohio Supreme Court defined "for profit" in the context of gambling violations:
 "R.C. 2915.01(E) defines `scheme or game of chance conducted for profit' as `any scheme or game of chance designed to produce income for the person who operates the scheme or game of chance, but does not include a charitable bingo game.' (Emphasis added.). Defining `profit' in relation to income is consistent with the common usage of that term. R.C. 1.42.
 "Black's Law Dictionary (5 Ed. 1979) 1090, defines `profit' as: `Most commonly, the gross proceeds of a business transaction less the costs of the transaction; i.e. net proceeds. Excess of revenues over expenses for a transaction; sometimes used synonymously with net income for the period. Gain realized from business or investment over and above expenditures.
 "Applying this prevailing definition of profit, we see no reason why the income produced by the FOE's use of gambling devices is not `profit.' To the extent its revenues exceeded its expenses, the FOE certainly profits from its gambling activities."
Id. at 423.
Similarly, in the present case, we see no reason why the money the patrons admitted depositing into the electronic games of chance should not be considered evidence that the games were conducted "for profit." Cf. State v. Young (1983), 13 Ohio App.3d 91,92-93 (noting that "profit" may be inferred from the circumstances, and finding a video Black Jack machine operated "for profit" when patrons deposited quarters into the machine). Furthermore, as this court noted in Dayton v. Combs (1993),94 Ohio App.3d 291, 307, to support a gambling conviction, the evidence merely must show that a scheme or game of chance was conducted for profit, not that it was profitable.
In reaching this conclusion, we find inconsequential Bowman's and Holmes' statement in their report that "[i]t was not determined who owned the gambling machines or what the amount of the profit was if not owned by the club; nor from whom the tip tickets were purchased." As we noted in Hurt, supra, a violation under O.A.C. 4301:1-1-53 "requires proof that a gambling device was used to commit a gambling offense, including proof on all elements of the offense." The parties do not dispute that the electronic games were gambling devices. Furthermore, they were being used to commit at least one gambling offense, a violation of R.C. 2915.02(A)(2). The statute provides that no person shall "[e]stablish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit." In our view, the VFW Post at least knowingly engaged in conduct that facilitated a game of chance conducted for profit when it allowed patrons to play the electronic gambling machines on its premises. The statute does not specify that the party facilitating the game of chance must actually be the party receiving the profit. As the Ninth District Court of Appeals recently recognized in Gran of Akron, supra, at 492:
 "Ohio Adm. Code 4301:1-1-53(B) sets forth the general rule that gambling, as defined in R.C. 2915.01(G), in liquor establishments is prohibited. R.C. 2915.01(G) defines a gambling offense as including a violation of R.C. 2915.02. R.C. 2915.02(A)(2) prohibits `conduct that facilitates any scheme * * * of chance conducted for profit.' `Conduct' is `to back, promote, organize, manage, carry on, or prepare for the operation of a scheme * * * of chance.' R.C. 2915.01(T). The phrase `conducted for profit' modifies `scheme of chance'; thus, the profit requirement does not necessarily attach to the person being charged with the violation. This is consistent with the concept that a facilitator of a gambling operation is as culpable as the person actively conducting the operation."
In the present case, of course, the circumstances suggest that the VFW Post was receiving the profit. The statute, however, imposes no such requirement. Finally, although we do not base our decision on this fact, we note that the VFW Post's counsel nearly made a judicial admission of his client's violations. Appearing before the LCC, the Post's attorney attempted to explain his client's conduct and numerous prior gambling violations. In so doing, counsel stated:
 "My guess is this happens in a lot of the VFW posts. There is a decline in membership and a decline in enrollment. The only way a lot of these clubs can stay in business is to attempt to do some type of gambling. I know it's wrong. The Commission knows it's wrong. I'm sure these clubs know it's wrong, but the choice sometimes for these clubs is either stay in business or go out of business.
 "They may have to go out of business. They are going to get a very hefty fine from you. I know the fact of the matter is you're going to tell me if they get one more violation, they're out of business. I understand that. And I will so inform my client. You see this with the American Legion posts and the VFW posts more often than you do [with] maybe the Eagles and the Elks around the state.
 "I speak to the Elks organization every year. And they have some gambling, but not nearly the amount as some of the other clubs. It's the veterans organizations where the veterans are getting much older that you see this happening. I'm not condoning it. I'm just trying to explain the situation they are in."
Although counsel spoke in general terms and referred to "these clubs," the implication of his statement is that the VFW Post had in fact committed a gambling violation. This court recognized in State v. Pipkins (Feb. 9, 1996), Montgomery App. No. 15060, unreported, that "[a]dmissions made by attorneys during the progress of a trial are usually held to be binding on their clients * * *." In the present case, however, we need not rely upon this basis to affirm the trial court's judgment. Having reviewed the record and applicable law, we find no error in the trial court's judgment affirming the LCC's order. Accordingly, we overrule the VFW Post's first assignment of error.
II.
 The Darke County Common Pleas Court erred when it found that the Liquor Control Commission did not abuse its discretion in issuing a one-hundred-day suspension of appellant's permit or ordering the forfeiture of $20,000.
In its second assignment of error, the VFW Post claims the trial court erred by finding no abuse of discretion in the LCC's imposition of a 100-day liquor permit suspension or a $20,000 fine. In particular, the VFW Post argues that the "excessive" and "harsh" sanction violates the "excessive fines" provisions of the Ohio and United States Constitutions.
We find this argument unpersuasive. Testimony from the hearing before the Liquor Control Commission reflects that the VFW Post had four or five prior violations since the early 1990s. Additionally, the Post had received a "fairly hefty fine" from the LCC in 1995. Counsel for the VFW Post acknowledged that his client would receive a "very hefty fine" for the present violations. He also acknowledged that one more violation likely would put the Post out of business.
In light of these previous violations, and counsel's anticipation of a stiff fine, we cannot say the trial court erred by finding no abuse of discretion in the LCC's sanctions. Furthermore, we note that R.C. 4301.25 authorized the LCC to suspend or revoke the VFW Post's liquor permit. Given that the statute allowed revocation, we cannot say a 100-day suspension is excessive. We also note that the $20,000 fine in lieu of suspension appears to be in accordance with R.C. 4301.252. Finally, the sanctions imposed in the present case also are similar to the sanctions imposed in other recent cases. See VFWPost 4027 Mt. Vernon v. Liquor Control Comm. (Nov. 6, 1996), Knox App. No. 96 CA 00022, unreported (finding no violation of the excessive fines clauses of the Ohio and United States Constitutions when the LCC suspended the appellant's liquor permit for eighty days or, alternatively ordered payment of a $16,000 fine); F.O.E. Aerie 0614 v. Liquor Control Comm. (April 18, 1997), Miami App. No. 96-CA-36, unreported (imposing a 160-day permit suspension or a $32,000 fine); Frank B. Castle v. Liquor ControlComm. (Nov. 13, 1996), Logan App. No. 8-96-8, unreported (imposing a 125-day permit suspension or a $25,000 fine). Accordingly, we overrule the VFW Post's second assignment of error and affirm the judgment of the Darke County Common Pleas Court.
Judgment affirmed.
BROGAN, J. and GRADY, J., concur.
Copies mailed to:
Darrell E. Fawley, Jr.
Kurt O. Gearhiser
Darius N. Kandawalla
Hon. Lee A. Bixler