OPINION
{¶ 1} On May 11, 2001, appellee, Louise Hodge Weller, was mailed a notice of a June 6, 2001 hearing before the Ohio Liquor Control Commission ("Commission"). The purpose of the hearing was to determine whether her liquor permit should be suspended, revoked or forfeited. The notice set forth the following two violations:
 {¶ 2} "Violation #1: On or about November 14, 2000, your agent and/or employee(s) Mary Ray, and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, tip tickets, in violation of 4301:1-1-53, Ohio Administrative Code.
 {¶ 3} "Violation #2: On or about November 14, 2000, your agent and/or employee(s) Mary Ray, and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, payoff on scheme of chance, in violation of 4301:1-1-53, Ohio Administrative Code."
 {¶ 4} A hearing was held before the Commission on June 6, 2001. At that hearing, counsel for Ms. Weller entered a plea of denial and stipulated to the documentary evidence and reports collected and submitted by Agent P. Csuhta. A second agent, James Nerswick, testified in person at the hearing. No other evidence was submitted. A review of the record reveals that counsel for Ms. Weller made no argument contesting any of the evidence presented, presented no argument as to the application or interpretation of the law, and said nothing in regard to mitigation other than to note that Ms. Weller had no prior record.
 {¶ 5} On July 2, 2001, the Commission issued an order which found that Ms. Weller had committed both gambling offenses. It then ordered her liquor permit to be suspended for a period of 100 days, or, in the alternative, imposed a fine in the amount of $10,000. Thereafter, Ms. Weller appealed to the Franklin County Court of Common Pleas, which reversed the Commission's order finding: (1) that the Commission had impermissibly placed the burden of proof upon Ms. Weller; and (2) that the Commission had not conclusively demonstrated the amount to which Ms. Weller had profited from the gambling activities. The Commission appeals this decision proffering the following assignment of error:
 {¶ 6} "The lower court erred and committed reversible error when it incorrectly interpreted R.C. 119.12 and the Court's role thereunder by substituting its judgment for the judgment of the Ohio Liquor Control Commission."
 {¶ 7} As noted, this matter is an administrative appeal from an order of the Commission pursuant to R.C. 119.12. In reviewing an order of the Commission in an R.C. 119.12 appeal, a court of common pleas is required to affirm an order if it is supported by reliable, probative, and substantial evidence. VFW Post 8586 v. Ohio Liquor Control Comm.
(1998), 83 Ohio St.3d 79, 81. This determination turns upon whether the Commission has demonstrated the charged violation by a preponderance of the evidence. Id. at 82. Furthermore, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts.University of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108. An agency's findings are presumed to be correct and must be deferred to by a reviewing court unless the court determines that the findings are internally inconsistent, impeached by the evidence of a prior inconsistent statement, rest on improper inferences, or are otherwise unsupportable. VFW, supra.
 {¶ 8} In this case, Ms. Weller stipulated to the evidence which supports the charged violations. That evidence established the following. The permit holder operates a liquor establishment at 1197 West Galbraith Road in Cincinnati, Ohio. On November 14, 2000, liquor control agents entered this establishment and observed a sign on the wall above containers filled with "tip tickets" which read "Child Care Foundation."[1] The agents purchased several tickets from the bartender, who deposited the fee into the bar cash register. After opening the tickets, the agents redeemed the winning tickets with the bartender. The money paid on the winning tickets was taken from the cash register and handed over to the agents before they left.
 {¶ 9} As a result of a multi-party investigation by the Cincinnati Police Department, the Hamilton County Sheriff's Office, and the Department of Liquor Control, it has been determined that the Child Care Foundation ("CCF") is a "front," and not in fact a legitimate charitable organization. Rather, CCF was in the business of selling boxes of tip tickets to liquor establishments, with the agreement that the proceeds from the sale of one-half of the tickets would be returned to CCF, while the proceeds from the sale of the remaining tickets would be kept by the purchaser. In this particular case, the Commission collected evidence, including "Instant Control" sheets, which documented that between the months of May 2000 to November 2000, Ms. Weller's establishment banked a profit from the sale of tickets which exceeded $9,000. Additionally, Ms. Weller was interviewed by Agent K. Scherer, at which time she admitted to keeping at least 15 percent of the proceeds from the sale of the tickets.
 {¶ 10} Ohio Adm. Code 4301:1-1-53(B) states:
 {¶ 11} "No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
 {¶ 12} R.C. 2915.01(F)(2) defines a "gambling device" as, inter alia:
 {¶ 13} "A ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet * * *[.]"
 {¶ 14} Finally, R.C. 2915.01(G)(1) defines a "gambling offense" as any violation of R.C. 2915.02, which provides in part:
 {¶ 15} "(A) No person shall do any of the following:
 {¶ 16} "* * *
 {¶ 17} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit * * * [.]"
 {¶ 18} It is undisputed that the tip tickets constitute gambling devices within the meaning of R.C. 2915.01(F)(2). Columbus v. I.O.R.M.,Sioux Tribe-Redman Club (1993), 88 Ohio App.3d 215, 216; VFW Post 8586, supra; Mills-Jennings, Inc. v. Department of Liquor Control (1982),70 Ohio St.2d 95; Gran of Akron, Inc. v. Ohio Liquor Control Comm.
(1996), 112 Ohio App.3d 487; American Legion Post 0046 Bellevue v. OhioLiquor Control Comm. (1996), 111 Ohio App.3d 795.
 {¶ 19} We readily conclude that the stipulated evidence introduced before the Commission was sufficient to find that Ms. Weller committed the charged violations, and that the lower court therefore abused its discretion in reversing the Commission's order in this case.
 {¶ 20} A violation of Ohio Adm. Code 4301:1-1-53 need only be proven by a preponderance of the evidence. VFW, supra. In this case, the stipulated and uncontested evidence established that Ms. Weller purchased and sold tip tickets, retaining at least 15 percent of the profit from the sale of those tickets. Indeed, at the hearing, counsel for Ms. Weller admitted that she had "the same two-box deal as the other ones [other clients of CCF] did." (Tr. 5.) Thus, the Commission could have properly and reasonably inferred that she retained up to 50 percent of the profit. See VFW Post 8586, supra. Moreover, even if counsel for Ms. Weller had made any argument, there is no evidence showing that she qualified as an exempt organization under R.C. 2915.02(D). That section provides an exception for the following:
 {¶ 21} "(1) Schemes of chance conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code * * *[.]"
 {¶ 22} However, as noted herein, CCF is not a legitimate charity, and the evidence clearly proves that Ms. Weller retained profits from the ticket sales.
 {¶ 23} Accordingly, we hereby sustain the appellant's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and reinstate the July 2, 2001 order of the Commission.
Judgment reversed and cause remanded.
BRYANT, J., and TYACK, P.J., concur.
[1] Tip tickets are generally printed on paper and come in several forms. When played, they are torn or peeled open to reveal a number or picture. Depending upon the particular ticket, a specified combination of numbers or pictures constitute a winning ticket. Regardless of type, the tickets are purchased and cashed through the bartender or barmaid. They are also purchased in an assortment with a predetermined payoff, such that once all of the tickets are purchased by patrons, a guaranteed profit is made by the liquor establishment.